PER CURIAM.
Appellants appeal the entry of a permanent injunction by the trial court. The injunction resulted from appellee's complaint filed below which alleged that appellants were operating a migrant labor camp within the city limits of the City of Arcadia, in that the property was being used as living quarters for seasonal, temporary migrant farm workers. Appellee alleged that such use of the property violated section 22.81 of the City Code of the City of Arcadia.
Appellee concedes that appellants’ property was used as an apartment house prior to the enactment of the Zoning Code of the City of Arcadia, and to that extent was a preexisting nonconforming use, but alleges that it was not used prior thereto as a migrant labor camp. The applicable sections of the Zoning Code of the City of Arcadia do not define “migrant labor camp.” Appellee argues that use of property as living quarters for seasonal, temporary migrant farm workers constitutes use as a “migrant labor camp.” We do not agree.
Since appellee’s zoning code does not define “migrant labor camp” and since appellants are licensed to operate the property by the Florida Hotel and Restaurant Commission as a “transient apartment” pursuant to section 509.242(1)(g), Florida Statutes (1983), we must look to the Florida Statutes to define “migrant labor camp.” Section 509.242(1)(g) under which appellants’ property is licensed as a “transient apartment” provides:
(g) Rooming houses, guest houses, cabins. — Any public lodging establishment not within the foregoing classifications shall be classified as a rooming house, a guest house, cabins, a tourist camp, or otherwise according to choice, but shall not be allowed a classification that could be confused with one of the foregoing. Converted dwelling houses, unless they can qualify for another classification, shall be classified under this paragraph. (Emphasis supplied.)
“Migrant labor camps” are defined and required to be licensed under chapter 381, Florida Statutes (1983). “Migrant labor *149 camp” is defined by section 381.422(3) as follows:
“Migrant labor camp” — One or more buildings or structures, tents, trailers, or vehicles, or any portion thereof, together with the land appertaining thereto, established, operated, furnished as an incident of employment, or used as living quarters for seasonal, temporary, or migrant farm workers whether or not rent is paid or reserved in connection with the use or occupancy of such premises. The definition of “migrant labor camp” also includes two or more migrant dwelling units located on the property of one person, but the definition does not include one migrant dwelling unit or a public lodging establishment licensed pursuant to chapter 509. However, all other housing described in this section is included in this definition, regardless of its primary purpose or design or regardless of whether it is offered to the general public. It is the intent of this section to require all such housing to be subject to the provisions of either chapter 509 or this law. (Emphasis supplied.)
It is the clearly expressed legislative intent that public dwelling facilities shall be licensed either under chapter 381 or chapter 509, but not both. When the state elects to license a lodging establishment open to the public under chapter 509, it would not then become a “migrant labor camp” merely because some, most or all of its occupants were migrant laborers. That seems to be the error that caused the trial court to enter the permanent injunction. The sole prayer of appellee’s complaint was: “WHEREFORE, Plaintiff requests that this Court enter a permanent mandatory injunction prohibiting Defendants, J.F. WILLIAMS and DURA D. WILLIAMS, husband and wife, from operating a migrant labor camp on the above-described property.”
The injunction ordered by the trial court found “that the Defendants are operating a migrant labor camp on the above-described property, which is not allowed under the above-described zoning” and “that the activities of Defendants upon said property constitute a nuisance.” The trial court then “enjoined and restrained (defendants) from operating a migrant labor camp and nuisance” and to “henceforth comply with Article VIII of the City Code of the City of Arcadia, Florida, and with the 1969 edition of the Southern Standard Housing Code....” The injunction does not specify which sections of the City Code or Southern Standard Housing Code must be complied with. We find, however, that because of their prior nonconforming use, appellants are not restricted by Article VIII of the City Code. We further find that the only section of the Southern Standard Housing Code that has been demonstrated to the court as being applicable is section 307, pertaining to rooming houses.
To restate our findings, we conclude that the trial court erred in finding that appellants’ property constituted a nuisance because it was being operated as a migrant labor camp. We also conclude that section 307 of the Southern Standard Housing Code is the only section of that code or the city code that has been demonstrated as being relevant. The provision of the injunction that states “[t]hat the Defendants are enjoined and restrained from allowing loud noises to emanate from the above-described property or allow litter to be strewn on the above-described and adjoining properties” has neither been cited nor argued as error. We, therefore, affirm the injunction as it related to that provision and reverse it in its other provisions as we have stated herein.
RYDER, A.C.J., and CAMPBELL, J., concur.
HALL, J., dissents with opinion.